# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KENNETH HESS,**
            **Plaintiff,**

            **v.**                                                          **Case No. 24-C-183**

**CHARLES ETSINGER, et al.,**
            **Defendants.**

---

## DECISION AND ORDER

Plaintiff Kenneth Hess, a Wisconsin state prisoner, filed a pro se civil rights complaint alleging that defendants violated his constitutional rights. I screened the complaint and allowed plaintiff to proceed on a claim that defendants Charles Etsinger and Kevilyn Crochiere were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The parties have filed cross-motions for summary judgment. This order denies the parties' motions for summary judgment.

## I. BACKGROUND[1]

Plaintiff was incarcerated at Oshkosh Correctional Institution (Oshkosh) during the events described in the complaint. Pl.'s Proposed Findings of Fact (PPFOF), ECF No. 33, ¶ 1; Defendants' Proposed Findings of Fact (DPFOF), ECF No. 37, ¶ 1. Defendants worked at Oshkosh as sergeants during the relevant time. PPFOF ¶¶ 2-3; DPFOF ¶¶ 2-3. This section sets forth plaintiff's version of the events that took place on August 9, 2023, followed by defendants' version.

---

[1] The court includes only material, properly supported facts in this section. *See* Fed. R. Civ. P. 56(c)(1).

**A.      Plaintiff's Version**

At 7:00 a.m. on August 9, 2023, plaintiff started feeling severe abdominal pain. PPFOF ¶ 4. After a few hours, he started feeling increased pain, and he experienced vomiting and constipation. *Id.* At 5:15 p.m., plaintiff asked Etsinger to contact the health services unit (HSU) because he could not take the pain anymore and his pain was getting worse. *Id.* Etsinger told plaintiff to fill out a "blue slip." *Id.* Plaintiff explained that it was an emergency and that he was in serious extreme pain. *Id.* Etsinger again told plaintiff to fill out a blue slip, which plaintiff did. *Id.* Plaintiff decided to wait until shift change so he could ask the next sergeant for help. *Id.* The health service request that plaintiff submitted states: "I been having very bad abdominal pain, vomiting and constipation since 7AM. I told Sgt. Etsinger around 5:15 PM and he refused to call for medical assistance. The pain is barely bearable at this point." DPFOF ¶ 7.

At 6:30 p.m., plaintiff asked Crochiere to contact the HSU for an emergency because was experiencing severe lower abdominal pain, worsening pain and symptoms, vomiting, constipation, and he had fainted in his room. PPFOF ¶ 5. Crochiere asked plaintiff if he would be okay, and he said no and that he needed a medical emergency. *Id.* Crochiere told plaintiff there was not a doctor on duty and that the nurse could not do much to assist him. *Id.* She directed him to fill out a blue slip. *Id.*

The next morning, at 8:00 a.m., plaintiff was called to the HSU where staff conducted a test and told him his white blood cells were elevated, and that based on his blood test results, something was seriously wrong. PPFOF ¶ 6. He was rushed to the emergency room where surgery was performed to remove his appendix for appendicitis. *Id.*

2

According to plaintiff, there is nothing in plaintiff's medical records or the unit logbook to show that defendants called the HSU on August 9, 2023, regarding his medical complaints. PPFOF ¶ 7. He says that under Division of Adult Institution policy, an HSU nurse would have been required to fill out a DOC-3437 Nurse's Telephone consultation form saying defendants called the HSU, and there is no known record of this happening. *Id.* Oshkosh has twenty-four-hour nursing staff at the prison. *Id.*

## B.    Defendants' Version

According to defendants, on August 9, 2023, plaintiff came to the sergeant's station and told Elsinger that his stomach hurt and he had been vomiting. DPFOF ¶ 7. Plaintiff asked Etsinger to place an emergency call on his radio. *Id.* During Etsinger's interaction with plaintiff, Etsinger did not perceive plaintiff to be in any distress and was not exhibiting any signs of pain, such as wincing, nor did plaintiff report that he was having any pain. DPFOF ¶ 8. Plaintiff's report that his stomach hurt and that he had been vomiting did not meet the criteria to call a medical emergency over the radio. DPFOF ¶ 9.

Etsinger is not a medical personnel member, but his education relating to his employment includes training in emergency response. DPFOF ¶ 10.  Security staff are trained to detect medical emergencies. DPFOF ¶ 11. Examples of medical emergencies for which a security staff member would contact the HSU or call for a first responder or crash cart include a prisoner having a heart attack, not breathing or being unconscious, having fallen, severely bleeding, or other similar health concerns that require immediate medical attention or for which the prisoner may be seriously harmed. *Id.* Although Etsinger did not observe any signs that plaintiff was suffering from a condition that constituted a

3

medical emergency when he complained to Etsinger about his stomach hurting and that he had been vomiting, Etsinger told plaintiff that he would call the HSU. DPFOF ¶ 12.

The decision to call the institution's HSU is made by the supervisors on the unit and Etsinger made the decision to call HSU. DPFOF ¶ 13. Security staff have been asked to follow an October 26, 2017, memo issued by the Health Services Manager which gives direction on referring prisoners to the HSU staff. DPFOF ¶ 14. Etsinger did not believe that plaintiff was suffering from a medical emergency as defined in the October 26, 2017, memo. DPFOF ¶ 15. Etsinger called the HSU on the phone and informed them that plaintiff was reporting that his stomach hurt and that he had been vomiting. DPFOF ¶ 16. Etsinger was advised by HSU staff to tell plaintiff to complete a blue slip, also known as a health services request (HSR), so he could be added to the list to be seen the next day, which Etsinger relayed to plaintiff. DPFOF ¶ 17.

Etsinger gave plaintiff a HSR form. DPFOF ¶ 18. Plaintiff did not complete it in front of Etsinger, and the form gets placed in a box where HSU staff collect the forms, so Etsinger did not know if plaintiff actually submitted an HSR to HSU. *Id.* HSRs are forms a prisoner uses to notify the HSU staff of a medical need or to ask a medical question. DPFOF ¶ 19. These HSRs are collected daily on the unit by nursing staff for review. *Id.* The medical staff triages the request by determining the immediacy of the need for the prisoner to be seen and whether an appointment should be set up or whether another response is more appropriate. *Id.*

Security staff cannot call the HSU or send prisoners to the HSU every time a prisoner asks security staff to contact the HSU for a medical issue. DPFOF ¶ 20. Per institution practice, security staff should only call the HSU for a prisoner's medical concern

4

or issue on an emergent or urgent basis. *Id.* Etsinger decided to contact the HSU regarding plaintiff's medical concern even though his perception of plaintiff's symptoms did not indicate an emergency as defined by policy. DPFOF ¶ 23. He contacted HSU based on plaintiff's report of his symptoms and so that a medical professional could evaluate the urgency of his condition. *Id.*

Later that day, before Etisinger's shift ended at 6:30 p.m., plaintiff came back to the sergeant's desk and told Etsinger that his stomach was still hurting and that he was nauseous. DPFOF ¶ 24. Plaintiff did not report being in any pain and did not show any signs of being in distress. *Id.* Etsinger called the HSU a second time and said that plaintiff was reporting that his stomach hurt and that he was nauseous. DPFOF ¶ 25. Etsinger was told to make sure plaintiff filled out the HSR out so he could be seen the next day. *Id.* Etsinger relayed to plaintiff HSU's direction that he should complete an HSR, and plaintiff told Etsinger that he had already completed the HSR and had placed it in the box. DPFOF ¶ 26. Etsinger did not have any more contact with plaintiff that day. DPFOF ¶ 27.

Crochiere started work at 6:30 p.m. DPFOF ¶ 28. Plaintiff approached her at the sergeant's station and asked her to call HSU because his stomach hurt. DPFOF ¶ 29. Crochiere directed plaintiff to fill out a blue slip, which he stated he had done. DPFOF ¶ 30. During Crochiere's interaction with plaintiff, he did not appear to be in any distress and was not exhibiting any signs of pain, such as wincing, nor did he report to her that he was having any pain. DPFOF ¶ 31. Crochiere did not observe any signs that plaintiff was suffering from a condition that constituted a medical emergency. *Id.* Crochiere is not a medical professional, but her education relating to her employment duties includes training in emergency response. DPFOF ¶ 32.

5

The next day, August 10, 2023, Etsinger worked from 2:30 a.m. to 6:30 p.m. DPFOF ¶ 33. That morning, plaintiff saw Etsinger at the sergeant station and told him that he was still feeling unwell and that he had fainted in the cell the night prior. DPFOF ¶ 34. At about the same time as this conversation, HSU called Etsinger for plaintiff to be seen, and plaintiff went to HSU. DPFOF ¶ 35.

Defendants do not have any knowledge of what happened while plaintiff was seen in HSU on August 10, 2023, or any trips off-site. DPFOF ¶ 36. Etsinger was informed by HSU that they were sending plaintiff off-site for a medical trip. DPFOF ¶ 37.

Sergeants do not have the authority to overrule medical staff on treatment decisions, nor do they have the authority to hire or contact a physician if a physician is not onsite. DPFOF ¶ 38. Sergeants do not have the authority to order medical staff to provide specific treatment to an incarcerated individual. DPFOF ¶ 39.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Analysis

Plaintiff contends that defendants violated his Eighth Amendment rights by denying him access to medical care on August 9, 2023. He asserts that his medical need was

6

serious because he had to go to the hospital for surgery to have his appendix removed. Plaintiff contends that defendants' failure to call the HSU for a medical emergency on August 9, 2023, amounts to deliberate indifference. Defendants contend that they did not act with deliberate indifference because the undisputed evidence shows that they contacted the HSU to convey plaintiff's complaints, in accordance with institution policy, and then followed the directions given by medical staff to have plaintiff fill out an HSR. Defendants also contend that they are entitled to qualified immunity.

Prison officials' deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment. *Riley v. Waterman*, 126 F.4th 1287, 1295 (7th Cir. 2025) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, plaintiff must prove (1) that he had an objectively serious medical condition (2) to which prison officials were "deliberately, that is subjectively, indifferent." *Id.* (quoting *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021)); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Defendants concede that appendicitis is a serious medical need, and that the objective element of an Eighth Amendment claim is not in dispute. Thus, the court will focus on whether defendants were deliberately indifferent to plaintiff's medical condition.

Prison officials are deliberately indifferent when they know of and disregard a substantial risk to a prisoner's health. *Riley*, 126 F.4th at 1295 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A prison official's decision to ignore a request for medical assistance can amount to deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 728-29 (7th Cir. 2016) (citing *Estelle*, 429 U.S. at 104-05). For a prison official's acts or omissions to constitute deliberate indifference, plaintiff does not need to show that the official

7

intended harm or believed that it would occur. *Id.* at 728 (citing *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996)). However, "mere negligence is not enough." *Id.* (citing *Estelle*, 429 U.S. at 106). A plaintiff "must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.* (citing *Farmer*, 511 U.S. at 837); *see also Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022).

Non-medical defendants, such as Etsinger and Crochiere, "can rely on the expertise of medical personnel." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). However, "nonmedical officials can 'be chargeable with ... deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)). "Non-medical defendants cannot simply ignore an inmate's plight." *Id.* (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Plaintiff must show that "the communication, in its content and manner of transportation, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Arnett*, 658 F.3d at 755 (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

Based on plaintiff's version of the events, he told Etsinger about his medical condition that included stomach pain, vomiting, and constipation, asking Etsinger to contact the HSU because he could not take the pain anymore and the pain was worsening. In response, Etsinger told plaintiff to fill out a blue slip and gave him one to fill out. Plaintiff stated that he was suffering a medical emergency and asked Etsinger to call

8

HSU for an emergency. Etsinger reiterated that plaintiff must fill out a blue slip for HSU to see him. Defendants, on the other hand, state that plaintiff told Etsinger that he had a stomachache and was vomiting. Etsinger says that plaintiff did not report being in pain and did not appear sick. Although Etsinger says he did not think plaintiff had a medical emergency, he called HSU twice and both times was told to have plaintiff fill out an HSR.

While plaintiff asserts that Etsinger did not call the HSU because there is no record of the calls, the policies plaintiff cites do not support his assertion that there needed to be a record or log of Etsinger's calls to the HSU. Plaintiff lacks personal knowledge of whether Etsinger called the HSU. Thus, plaintiff cannot show that Etsinger did not do so. However, as described in the preceding paragraph, the parties dispute what plaintiff told Etsinger about his medical condition. Etsinger characterizes plaintiff's medical complaint as a mere stomachache and vomiting, without any mention of pain. Assuming that this is the condition Etsinger described to the HSU, along with Etsinger's assessment that plaintiff did not appear to be sick, it does not seem unreasonable for the HSU to direct Etsinger to have plaintiff fill out an HSR so that he could be seen the next day. But plaintiff says he told Etsinger that he was suffering almost unbearable stomach pain (that was getting worse), vomiting, and constipation. When Etsinger told him to fill out an HSR, plaintiff says he explained that it was a medical emergency and that he was in serious, extreme pain. According to defendants, corrections staff have the discretion to call the HSU or a first responder for a medical emergency. The record also reflects that nursing staff members were present at Oshkosh twenty-four hours a day. Based on plaintiff's description of his medical condition, Etsinger should have obtained medical care for plaintiff because he was suffering a medical emergency, and a reasonable factfinder

9

could conclude that Etsinger's failure to do so amounted to deliberate indifference. *See Arnett*, 658 F.3d at 755.

Similarly, the parties dispute what plaintiff said to Crochiere about his medical condition. According to plaintiff, once Crochiere started work at 6:30 p.m., plaintiff asked her to contact the HSU for an emergency because he was experiencing severe lower abdominal pain, worsening pain and symptoms, vomiting, constipation, and he had fainted in his room. When Crochiere asked plaintiff if he would be okay, he said no and said he needed a medical emergency. Crochiere told plaintiff there was not a doctor on duty and the nurse could not do much to assist him, and she directed him to fill out a blue slip. In contrast, according to Crochiere, plaintiff asked her to call the HSU because "his stomach hurt." If, as Crochiere asserts, plaintiff simply reported that he had a stomachache, Crochiere's direction to submit an HSR is reasonable. On the other hand, plaintiff describes telling Crochiere that he was experiencing much more than just a stomachache. A reasonable jury could find that her response to him was a deliberate disregard of his serious medical need and violated plaintiff's constitutional rights.

Defendants contend that they are entitled to qualified immunity because it was not clearly established that they could not rely on the 2017 HSU memo and directions from medical staff when responding to plaintiff's complaints. They state that plaintiff can identify no authorities indicating that prison officials violate the Eighth Amendment when a prisoner reports stomach pain and vomiting, the officials contact medical staff, and the officials follow directions from medical staff. Defendants assert that it was not clearly established that the Eighth Amendment required them to contact the HSU, or that they had the authority to order medical staff to provide treatment.

10

Qualified immunity "protects government officials from suit for damages when their conduct does not violate clearly established statutory or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). If either inquiry can be answered in the negative, the official is entitled to summary judgment.

A constitutional right is clearly established if "the right in question [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lindell v. Pollard*, 558 F. Supp. 3d 734, 744 (E.D. Wis. 2021) (quoting *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). "[T]he clearly established right must be defined with specificity." *Id.* (citing *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019)). The court should "analyze whether precedent squarely governs the facts at issue, mindful that [courts] cannot define clearly established law at too high a level of generality." *Id.* at 744-45 (quoting *Strand v. Minchuk*, 910 F.3d 909, 917 (7th Cir. 2018)).

Defendants argue that their version of the facts entitles them to qualified immunity. They do not argue that the facts taken in the light most favorable *to plaintiff* entitle them to qualified immunity. However, if plaintiff told defendants that he was suffering extreme unbearable stomach pain, vomiting, constipation and fainting, a reasonable factfinder could conclude that their failure to obtain medical care for him amounted to deliberate indifference, in violation of clearly established law. *See Arnett*, 658 F.3d at 755; *see also Walker v. Benjamin*, 293 F.3d 1030, 1040-41 (7th Cir. 2002) (clearly established that

11

prison officials cannot refuse medical care for painful condition). Defendants are thus not entitled to qualified immunity at this stage.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for summary judgment (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (ECF No. 35) is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone status conference will be held on October 1, 2025 at 10:00 a.m. to discuss the next steps in the litigation.

Dated at Milwaukee, Wisconsin, this 2nd day of September, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge